**LOWENSTEIN SANDLER PC**
Mary E. Seymour (MS 3950)
Cassandra M. Porter (CP 3571)
65 Livingston Avenue
Roseland, NJ 07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400

*Counsel to the Class 1 Trustee*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>AEROBICS, INC.,<br><br>            Debtor. | Case No.: 10-24769 (MS)<br><br>Hon. Morris Stern<br><br>Chapter 11 |
| CLASS 1 TRUST OF AEROBICS, INC. BY AND THROUGH THE CLASS 1 TRUSTEE,<br><br>            Plaintiff,<br><br>vs.<br><br>NAUTIC PARTNERS, LLC, GERALD J. STAUB, GORDON R. BOGGIS, THOMAS N. STAUB, ROBERT S. GREENFIELD, AEROBICS HOLDING, INC., PACE FITNESS, LLC, and JOHN DOES 1-10,<br><br>            Defendants. | Adversary No.: 12-_____(MS) |

**ADVERSARY COMPLAINT**

26400/2
05/13/2012 20545990.3

Plaintiff, Allen Wilen, in his capacity as the Class 1 Trustee ("Trustee" or "Plaintiff") and on behalf of the Class 1 Trust of Aerobics, Inc. (the "Class 1 Trust") by and through undersigned counsel, alleges as follows:

## NATURE OF ACTION

1. The Trustee, in his capacity as the representative of the Class 1 Trust, brings this action for money damages and other relief against the directors and officers of Aerobics, Inc. (the "Debtor"), including Nautic Partners, LLC ("Nautic Partners"); Gordon R. Boggis ("Boggis"); Gerald J. "Jerry" Staub ("Jerry Staub"); Thomas N. "Tom" Staub ("Tom Staub"); Robert S. "Bob" Greenfield ("Greenfield"); the parent company of the Debtor, Aerobics Holding, Inc. ("Holding"); the parent company of Holding, Pace Fitness, LLC ("Pace"); along with John Does 1-10 (collectively with Nautic Partners, Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, and Pace, the "Defendants").

2. As described and discussed herein, the Defendants breached the fiduciary duties they owed to the Debtor, violated the applicable standards imposed under the Delaware General Corporation Law (Delaware Code, Title 8), and committed waste of the Debtor's assets through a number of actions and transactions which advanced no legitimate business purpose, were entered into without due and proper care, constituted gross neglect of the interests of the Debtor, and/or constituted conflicts of interest and self-dealing. Simply, the Defendants used the Debtor as their personal piggy bank and in doing so, the Defendants violated their legal duties of care and loyalty to the Debtor which led to the dissipation of the Debtor' assets and eventual bankruptcy.

3. In particular, the Defendants:

   (a)  made the Debtor incur additional unnecessary debt through loans and other extensions of credit;

   (b)  forced the Debtor to renew lease obligations because the landlord corporation was owned by two of the defendants; and

    (c)    allowed the declaration and payment of cash dividends to the Debtor's shareholders at times when the Debtor was suffering substantial operating losses and financial hardship.

4. In all of the wrongful acts, conduct and transactions which form the basis of this Complaint, the Defendants demonstrated a lack of loyalty, good faith, and/or due care toward the Debtor and its interests.

5. Because the Defendants breached their duties of good faith, loyalty, and/or due care as alleged herein, the resulting wrongful acts, conduct, and transactions which form the basis of this Complaint are outside of the protection, if any, otherwise afforded by the business judgment rule.

6. To remedy the Defendants' breach of fiduciary duties, neglect, and waste of corporate assets, the Trustee seeks money damages and such other relief as this Court deems proper and just.

## JURISDICTION AND VENUE

7. On May 13, 2010 (the "Petition Date"), the Debtor filed a voluntary petition (the "Bankruptcy Case") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (this "Court").

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b) because this adversary proceeding arises under the Bankruptcy Code and is related to the Bankruptcy Case.

9. This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

10. Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409(a).

## THE PARTIES

11. On June 30, 2011, an Amended Disclosure Statement ("Disclosure Statement") for the Joint Plan of Liquidation of Aerobics, Inc. ("Plan") was filed. On August 9, 2011, the

Court held a joint hearing to consider approval of the Disclosure Statement, and if appropriate, to confirm the Plan (the "Joint Hearing").

12. The Plan was approved by this Court at the Joint Hearing and an order approving the Plan was entered on August 15, 2011 ("Confirmation Order").

13. Plaintiff was appointed the Trustee pursuant to the Confirmation Order.

14. Defendant Nautic Partners, upon information and belief, is a middle-market private equity firm incorporated in the state of Delaware with a principal place of business in Providence, Rhode Island. Upon information and belief, Nautic Partners was a seventy-two and half percent (72.5%) shareholder of the Debtor. See Certification of Robert Greenfield in Support of First-Day Motions dated May 19, 2010 ("Greenfield Certification") at ¶8.

15. Defendant Boggis, upon information and belief, was the Debtor's President and Chief Executive Officer starting in 2006 until shortly prior to the Petition Date. Upon information and belief, Boggis was a ten percent (10%) shareholder of the Debtor. Id. Upon information and belief, Boggis was a Member of Pace. Upon information and belief, Boggis currently resides in New Jersey.

16. Defendant Jerry Staub, upon information and belief, was the Debtor's Chairman. Upon information and belief, Jerry Staub was a ten percent (10%) shareholder of the Debtor. Id. Upon information and belief, Jerry Staub was also the President of Holding, a Manager of Pace and a member of Staub Properties, LLC, the Debtor's landlord. Upon information and belief, Jerry Staub currently resides in New Jersey.

17. Defendant Tom Staub, upon information and belief, was the Debtor's Secretary. Upon information and belief, Tom Staub was a seven and half percent (7.5%) shareholder of the Debtor. Id. Upon information and belief, as of the Petition Date, Tom Staub was the Secretary of Holding and a Manager of Pace. Upon information and belief, Tom Staub currently resides in New Jersey.

18. Defendant Greenfield, upon information and belief, was the Debtor's Chief Financial Officer prior to the Petition Date through the sale fo the Debtor's assets in the Bankruptcy Case. Upon information and belief, Greenfield currently resides in New Jersey.

19. Defendant Holding, upon information and belief, is a limited liability company incorporated in the state of Delaware. Upon information and belief, Pace is the sole shareholder of Holding.

20. Defendant Pace, upon information and belief, is a limited liability company incorporated in the state of Delaware. Upon information and belief, the Managers of Pace include Tom Staub, Gerry Staub, along with various John Doe defendants.

21. Defendant John Doe 1, upon information and belief, was the Debtor's Chief Financial Officer prior to Greenfield and the Debtor's Controller.

22. Defendant John Doe 2, upon information and belief, was a shareholder of the Debtor and a Manager of Pace.

23. Defendant John Doe 3, upon information and belief, was a shareholder of the Debtor and a Manager of Pace.

24. Defendant John Doe 4, upon information and belief, is a shareholder of Pace.

25. Defendant John Doe 5, upon information and belief, is a shareholder of Pace.

26. Defendant John Doe 6, upon information and belief, is a shareholder of Pace.

27. Defendant John Doe 7, upon information and belief, is a shareholder of Pace.

28. Defendant John Doe 8, upon information and belief, is a Manager of Pace.

29. Defendant John Doe 9, upon information and belief, is a Manager of Pace.

30. Defendant John Doe 10, upon information and belief, is a Manager of Pace.

## STATEMENT OF FACTS

31. Upon information and belief and at all times relevant to this Complaint, the Plaintiff alleges the following:

**A.     Corporate Structure and History.**

32. As of the Petition Date, the Debtor manufactured and distributed exercise equipment to active special fitness equipment retailers throughout the United States and Canada.

33. Upon information and belief, the Debtor was a closely-held corporation.

34. Upon information and belief, the Debtor's business was founded in 1968 by William Staub, the father of defendants Jerry Staub and Tom Staub. Id. at ¶7.

35. Upon information and belief, the Debtor was incorporated in the state of Delaware in 1997.

36. Upon information and belief, in 1997, the Debtor opened a facility in West Caldwell, New Jersey. Id. at ¶6.

37. Upon information and belief, in October 1997, Nautic Partners invested Seven Million Five Hundred Ninety-Four Thousand and Thirty-Two Dollars ($7,594,032) ("Initial Investment") into the Debtor's business and obtained a significant equity position in the Debtor.

38. Upon information in belief, also in 1997, the Debtor borrowed Eighteen Million Four Hundred and Six Thousand Dollars ($18,406,000).

39. Upon information and belief, as of the Petition Date, the Debtor was a wholly-owned subsidiary of Holding.

**B.     The Debtor Incurs Significant Debt in Early 2000s.**

    **1.     Line of Credit.**

40. Upon information and belief, in December 2002, the Debtor entered into a Four Million Dollar ($4,000,000) line of credit note ("$4M Line of Credit") with PNC National Bank, National Association ("PNC").

41. Upon information and belief, in December 2003, the note underlying the $4M Line of Credit was amended.

### 2. Term Loan.

42. Upon information and belief, in December 2003, the Debtor entered into a Twelve Million Dollar ($12,000,000) term note (the "Term Loan") with PNC.

### C. Distribution of the Debtor's Assets in 2003.

43. Upon information and belief, on December 11, 2003, a joint meeting of the Board of Managers of Pace, the Board of Directors of Holding, and the Board of Directors of the Debtor was held ("Joint Meeting").

44. Upon information and belief, the purpose of the Joint Meeting was to consider and approve the use of proceeds of the Term Loan to fund a distribution to Members of Pace.

45. Upon information and belief, at the conclusion of the Joint Meeting, the Debtor agreed to make a dividend to Holding in the amount of Twelve Million Dollars ($12,000,000).

46. Upon information and belief, at the conclusion of the Joint Meeting, Holding agreed to make a dividend to Pace in the amount of Twelve Million Dollars ($12,000,000).

47. Upon information and belief, on or about December 15, 2003, Pace distributed Twelve Million Dollars ($12,000,000) to its Members (the "2003 Distribution").

48. Upon information and belief, the 2003 Distribution was made from the Term Loan proceeds.

### 1. Distributions Made to Nautic Partners.

49. Upon information and belief, on or about January 22, 2003, Nautic was paid Seven Million Five Hundred Ninety-Three Thousand and Twenty-Seven Dollars ($7,593,027) from the Debtor's assets.

50. Upon information and belief, on or about December 12, 2003, Nautic Partners received a distribution of Fifteen Million Dollars ($15,000,000) from the Debtor in connection with the 2003 Distribution.

### 2. Distributions to Jerry Staub and Tom Staub.

51. Upon information and belief, Jerry Staub received One Million Three Hundred and Five Thousand Dollars ($1,305,000) from the 2003 Distribution.

52. Upon information and belief, Tom Staub received One Million Four Thousand Seven Hundred Sixty Dollars ($1,004,760) from the 2003 Distribution.

### D. Term Loan is Refinanced in 2006.

53. Upon information and belief, Boggis and PNC entered into discussions to refinance the $4M Line of Credit and the Term Loan in March 2006.

54. On April 26, 2006, the Debtor and PNC entered into an "Amended and Restated Loan Agreement" wherein the Debtor was permitted to refinance the $4M Line of Credit and the Term Loan (the "2006 Refinancing").

55. Upon information and belief, the purpose of the 2006 Refinancing was to fund working capital, refinance the Term Loan, and pay a dividend to the owners of the Debtor up to a maximum amount of Eight Million Dollars ($8,000,000).

### E. Further Transfers of the Debtor's Assets to Nautic Partners.

56. Upon information and belief, on May 31, 2006, Nautic Partners received a distribution in the amount of Eight Million One Hundred and Fifteen Thousand Dollars ($8,115,000) from the Debtor's assets (the "2006 Distribution").

57. Upon information and belief, the Debtor made subsequent distributions to Nautic Partners subsequent to the 2006 Distribution.

### F. Debtor's Insolvency.

58. Upon information and belief, the Debtor was rendered insolvent in 2003 as a result of various distributions being made to defendants Nautic Partners, Jerry Staub, Tom Staub and certain other defendants.

59. Upon information and belief, starting in or about June 2007, the Debtor was not in compliance with various covenants of the Line of Credit.

60. Upon information and belief, on or about May 12, 2008, the Term Loan was refinanced for a second time by the Debtor.

61. Upon information and belief, on or about October 6, 2008, the Debtor and PNC entered into a forbearance agreement which deferred the Debtor's payments through February 28, 2009.

62. Upon information and belief, in late 2008 and early 2009, the Debtor laid off a significant portion of its workforce.

63. Upon information and belief, despite significant cash flow deficiencies and employee lay-offs, in or about October 2008, the Debtor extended its lease for the West Caldwell location ("Lease") with its landlord, Staub Properties, LLC (the "Landlord") for an additional two-year period, retroactive to October 1, 2007.  The Landlord is an insider of the Debtor, as that term is defined in Bankruptcy Code § 101(31).

64. Upon information and belief, the Lease required minimum rental payments of Three Hundred Forty-Seven Thousand and Seven Hundred Sixty Dollars ($347,760) per year plus payments for insurance, taxes and maintenance.

65. Upon information and belief, the Debtor was current on its rent payments under the Lease as of the Petition Date.

66. Upon information and belief, by June 30, 2009, the Debtor had a working capital deficiency of Seven Million Seven Hundred and Eight Thousand Four Hundred and Ninety-Five Dollars ($7,708,495).

67. Upon information and belief, prior to the Petition Date, the Debtor failed to make its scheduled payments to PNC on either the Line of Credit or the Term Loan and was in default under both loans.

68. Upon information and belief, as a result of its losses and deficiencies, and failure to make payments on the outstanding debt, the Debtor violated its loan covenants with PNC.

**G.     Bankruptcy Filing.**

69.    Upon information and belief, as a result of the Debtor's inability to repay its debts to PNC, the Debtor sought protection under the Bankruptcy Code on the Petition Date.

70.    Upon information and belief, the Debtor owed PNC over Eleven Million Dollars ($11,000,000) as of the Petition Date.

71.    Upon information and belief, the Debtor owed its unsecured creditors approximately One Million Five Hundred Thousand Dollars ($1,500,000) as of the Petition Date.

**H.     Facts Pertinent to this Adversary Proceeding.**

72.    Upon information and belief, despite the Debtor's losses and inability to repay its debts to PNC, the Debtor continued to operate its business and transfer its property, either by checks, cashier checks, wire transfers or otherwise to certain entities on or within one-year prior to the Petition Date, that is between May 13, 2009 and May 12, 2010 (the "Preference Period").

73.    Upon information and belief, the Debtor was insolvent during all times relevant to this Complaint.

**FIRST CLAIM FOR RELIEF**
BREACH OF FIDUCIARY DUTY

74.    Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

75.    Delaware Code, Title 8, § 141(a) provides that the business and affairs of every corporation organized under Delaware law shall be managed by or under the direction of a board of directors.

76.    As a result of their obligation to manage and to direct the business and affairs of the corporation, certain fiduciary duties, including, but not limited to, loyalty, good faith and due care, are imposed on a corporation's directors and, accordingly, the directors are obligated to act on an informed basis, in good faith, and in the honest belief that any action taken or any decision not to act was in the best interests of the corporation.

77. Jerry Staub, Boggis, Tom Staub, Greenfield, and certain John Doe defendants individually and/or jointly, committed one or more negligent and/or reckless acts or omissions to act, in the conduct of the Debtor's business, which acts or omissions constituted breaches of their fiduciary duties, including but not limited to the duties of loyalty, good faith and due care.

78. Jerry Staub's, Boggis', Tom Staub's, Greenfield's, and certain John Doe defendants' breaches of fiduciary duties as directors and/or officers of the Debtor constituted negligence, bad faith, willful misconduct, recklessness, lack of due care, conflict of interest and/or self-dealing.

79. Given their positions of control and authority over the Debtor, Jerry Staub, Boggis, Tom Staub, Greenfield, and certain John Doe defendants were in a position, directly or indirectly, to control and to direct the conduct of the Debtor's business operations and activities. Accordingly, each defendant is liable as a direct participant in, as a conspirator in connection with, and/or as an aider and abettor of the wrongs identified in this Complaint.

80. As a direct and proximate result of the defendants' breaches of their fiduciary duties, the Debtor engaged in imprudent activities, all of which have caused significant losses to the Debtor and to its estate.

81. As a result of the defendants' bad faith, lack of loyalty, and lack of due care rising to the level of gross negligence, as alleged herein, the business judgment rule provides no protection and/or no defense for the defendants to the claims set forth in this Count of the Complaint.

82. By reason of defendants' misconduct, the Debtor's estate is entitled to recover actual, compensatory, and consequential damages from Jerry Staub, Boggis, Tom Staub, Greenfield, and certain John Doe defendants, jointly and severally.

83. Because the acts and conduct of defendants, or certain of such acts and conduct, were intentional, willful, wanton, malicious, and/or grossly negligent and reckless, and without justification or excuse, the Debtor is also entitled to recover punitive damages in an amount to be determined at time of trial.

## SECOND CLAIM FOR RELIEF
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY MAJORITY SHAREHOLDER, NAUTIC PARTNERS

84. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

85. Nautic Partners knew or should have known that the other defendants were engaged in breaches of fiduciary duty and other misconduct.

86. Nautic Partners gave substantial assistance and encouragement to the other defendants' breaches of fiduciary duty.

87. Accordingly, Nautic Partner is jointly and severally liable for the damages caused by the other defendants' wrongful conduct.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF DELAWARE CODE, TITLE 8, § 170 AND § 174 RELATING TO THE 2003 DISTRIBUTION

88. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

89. Delaware Code, Title 8, § 170 provides that the directors of a corporation can only declare dividends on shares of the corporation's capital stock out of either the corporation's capital surplus or its net profits for the relevant fiscal year.

90. Delaware Code, Title 8, § 174 provides that the directors of a corporation can be held personally liable for the unlawful payment of dividends by the corporation.

91. On information and belief, the Debtor did not have a capital surplus, as that term is defined under Title 8 of the Delaware Code, or net profits in 2003.

92. Jerry Staub, Tom Staub, Holding, Pace and certain of the John Doe defendants each violated 8 Del. Code § 170 by declaring and authorizing the Debtor to pay cash dividends on outstanding shares of common stock in 2003.

93. On information and belief, the unlawful payments of cash dividends in 2003 resulted in the Debtor needlessly and improperly paying out approximately $12 million in cash dividends on its outstanding shares of common stock.

94. Pursuant to 8 Del. Code § 174, defendants Jerry Staub, Tom Staub, Holding, Pace, and certain of the John Doe defendants are personally liable to the Debtor and to its creditors for the full amount of all dividends that were unlawfully paid.

95. The actions of Jerry Staub, Tom Staub, Holding, Pace and certain of the John Doe defendants in this regard were willful and/or negligent.

96. As a direct and proximate result of Jerry Staub's, Tom Staub's, Holding's, Pace's, and certain of the John Doe defendants' violation of 8 Del. Code §§ 170 and 174, significant losses were caused to the Debtor and to its estate.

97. As a result of the Defendants' bad faith, lack of loyalty, and lack of due care rising to the level of gross negligence, as alleged herein, the business judgment rule provides no protection and/or no defense for the defendants to the claims set forth in this Count of the Complaint.

98. By reason of Jerry Staub's, Tom Staub's, Holding's, Pace's, and certain of the John Doe defendants' misconduct, the Debtor's estate is entitled to recovery of actual, compensatory, and consequential damages from defendants, jointly and severally.

99. Because the acts and conduct of Jerry Staub, Tom Staub, Holding, Pace, and certain of the John Doe defendants, or certain of such acts and conduct, were intentional, willful, wanton, malicious, and/or grossly negligent and reckless, and without justification or excuse, the Debtor is also entitled to recover punitive damages in an amount to be determined at time of trial.

**FOURTH CLAIM FOR RELIEF**
VIOLATION OF DELAWARE CODE, TITLE 8, § 170 AND § 174 RELATING TO THE 2006 DISTRIBUTION

100. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

101. Delaware Code, Title 8, § 170 provides that the directors of a corporation can only declare dividends on shares of the corporation's capital stock out of either the corporation's capital surplus or its net profits for the relevant fiscal year.

102. Delaware Code, Title 8, § 174 provides that the directors of a corporation can be held personally liable for the unlawful payment of dividends by the corporation.

103. On information and belief, the Debtor did not have a capital surplus, as that term is defined under Title 8 of the Delaware Code, or net profits in 2006.

104. Defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace and certain of the John Doe defendants each violated 8 Del. Code § 170 by declaring and authorizing the Debtor to pay cash dividends on outstanding shares of common stock in 2006.

105. On information and belief, the unlawful payments of cash dividends in 2006 resulted in the Debtor needlessly and improperly paying out approximately $8 million in cash dividends on its outstanding shares of common stock.

106. Pursuant to 8 Del. Code § 174, defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace, and certain of the John Doe defendants are personally liable to the Debtor and to its creditors for the full amount of all dividends that were unlawfully paid.

107. The actions of defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace and certain of the John Doe defendants in this regard were willful and/or negligent.

108. As a direct and proximate result of defendants Jerry Staub, Boggis, Tom Staub, Greenfields, Holdings, Pace, and certain of the John Doe defendants' violation of 8 Del. Code §§ 170 and 174, significant losses were caused to the Debtor and to its estate.

109. As a result of these defendants' bad faith, lack of loyalty, and lack of due care rising to the level of gross negligence, as alleged herein, the business judgment rule provides no protection and/or no defense for the defendants to the claims set forth in this Count of the Complaint.

110. By reason of defendants Jerry Staub's, Boggis', Tom Staub's, Greenfield's, Holding's, Pace's, and certain of the John Doe defendants' misconduct, the Debtor's estate is entitled to recovery of actual, compensatory, and consequential damages from defendants, jointly and severally.

111. Because the acts and conduct of defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace and certain of the John Doe defendants, or certain of such acts and conduct, were intentional, willful, wanton, malicious, and/or grossly negligent and reckless, and without justification or excuse, the Debtor is also entitled to recover punitive damages in an amount to be determined at time of trial.

**FIFTH CLAIM FOR RELIEF**
GROSS NEGLIGENCE AND MISMANAGEMENT

112. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

113. Delaware Code, Title 8, § 141(a) provides that the business and affairs of every corporation organized under Delaware law shall be managed by or under the direction of a board of directors.

114. As a result of their obligation to manage and to direct the business and affairs of the corporation, certain fiduciary duties, including, but not limited to, loyalty, good faith and due care, are imposed on a corporation's directors and, accordingly, the directors are obligated to act on an informed basis, in good faith, and in the honest belief that any action taken or any decision not to act was in the best interests of the corporation.

115. The acts and commissions of Defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace, and certain of the John Doe defendants, as set forth herein, constitute gross mismanagement of the Debtor's business, gross negligence, and a gross violation of defendants' duties of due care to the Debtor.

116. As a direct and proximate result of Jerry Staub's, Boggis', Tom Staub's, Greenfield's, Holding's, Pace's, and certain of the John Doe defendants' gross mismanagement and gross negligence, the Debtor engaged in imprudent activities, all of which caused significant losses to the Debtor and its estate.

117. As a result of defendants Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace, and certain of the John Doe defendants' bad faith, lack of loyalty, and lack of due care

rising to the level of gross negligence, as alleged herein, the business judgment rule provides no protection and/or no defense for these defendants to the claims set forth in this Count of the Complaint.

118. By reason of defendants Jerry Staub's, Boggis', Tom Staub's, Greenfield's, Holding's, Pace's, and certain of the John Doe defendants' gross mismanagement and gross negligence, the Plaintiff is entitled to recover actual, compensatory, and consequential damages from defendants, jointly and severally.

119. Because the acts and conduct of Jerry Staub, Boggis, Tom Staub, Greenfield, Holding, Pace, and certain of the John Doe defendants, or certain such acts and conduct, were intentional, willful, wanton, malicious, and/or grossly negligent and reckless, and without justification or excuse, the Plaintiff is also entitled to recover from defendants punitive damages in an amount to be determined at time of trial.

### SIXTH CLAIM FOR RELIEF
CORPORATE WASTE

120. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

121. The Defendants caused the Debtor to make distributions, such as the 2003 Distribution and the 2006 Distribution, that had no rational business purpose and no business person of ordinary, sound judgment should have taken such actions.

122. These actions constituted actionable waste of the Debtor's property.

123. As a result of the Defendant's improper conduct, the Debtor suffered damages for which it is entitled to recover in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
FRAUDLENT TRANSFER TO NAUTIC PARTNERS

124. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

125. Upon information and belief, Nautic Partners received transfers totaling at least Twenty-Three Million One Hundred Fifteen Thousand Dollars ($23,115,000) from the Debtor (the "Nautic Transfers") in addition to repayment of its Initial Investment.

126. The Nautic Transfers were not on account of an antecedent debt or pre-payment for goods subsequently received by the Debtor, and the Debtor did not receive reasonable equivalent value in exchange for such Nautic Transfers. Moreover, upon information and belief: (a) the Debtor was insolvent on the date of the Nautic Transfers; (b) the Debtor was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or (c) the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

127. Accordingly, the Nautic Transfers constitute avoidable fraudulent transfers pursuant to Bankruptcy Code §§ 544(b) and 548 and applicable non-bankruptcy law, including but not limited to N.J.S.A. § 25:2-20, and the amount of the Nautic Transfers must be repaid to the Plaintiff, plus interest thereon to the date of payment pursuant to 11 U.S.C. § 550, together with costs of suit and such other relief as the Court deems just, proper, and/or equitable.

### NINTH CLAIM FOR RELIEF
RECHARACTERIZATION

128. Plaintiff incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

129. To the extent that the Nautic Transfers and the 2003 Distribution are not avoidable as pled herein, the Plaintiff requests that the Nautic Transfers and the 2003 Distribution be deemed loans to the Defendants. Thus, such loans are property of the Debtor's estate and must be repaid.

111. Therefore, the Plaintiff is entitled to an order and judgment directing the turnover of Nautic Transfers and the 2003 Distribution pursuant to 11 U.S.C. §542(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendants:

(a) Declaring that the individual Defendants have breached their fiduciary duties of loyalty and care in approving the payment of the 2003 Distribution and the 2006 Distribution;

(b) Declaring payment of the 2003 Distribution in violation of 8 Del. C. § 170;

(c) Declaring payment of the 2006 Distribution in violation of 8 Del. C. § 170;

(d) Declaring the Defendants acts towards the Debtor constituted gross mismanagement and waste of the Debtor's assets;

(e) Declaring the Defendants acted in a concerted effort to strip the Debtor's assets;

(f) Declare the 2006 Distribution avoidable under 11 U.S.C. §§ 544 and 548 and applicable non-bankruptcy law, including but not limited to, N.J.S.A. § 25:2-20;

(g) Granting judgment in favor of Plaintiff pursuant to 11 U.S.C. § 550 in the amount to be determined at trial;

(h) For disallowance of Defendant's claim or claims against the Debtor pursuant to 11 U.S.C. § 542;

(i) Awarding compensatory damages to the Plaintiff, including pre-judgment and post-judgment interest thereon;

(j) Awarding Plaintiff reasonable attorneys' fees and costs of collection; and

(k) Granting Plaintiff such other and further relief as the Court deems just and equitable.

Dated: May 13, 2012        **LOWENSTEIN SANDLER PC**

By: */s/ Cassandra M. Porter*

>Mary E. Seymour, Esq.
>Cassandra M. Porter, Esq.
>65 Livingston Avenue
>Roseland, New Jersey 07068
>(973) 597-2500 (Telephone)
>(973) 597-2400 (Facsimile)
>
>*Counsel for Plaintiff, the Class 1 Trustee*